Emmett J. Schnepp, J.
In this action, plaintiffs seek an order declaring, among other things, that the present districting and apportionment of the members of the Ontario County Board of Supervisors is void, invalid and unconstitutional, and directing permanent redistricting or reapportionment to insure compliance with the equal protection provisions of law, and for temporary relief pending the adoption of a final constitutional plan. Ontario County consists of 16 separate townships, in each of which a supervisor is elected. Two supervisors are elected in the City of Canandaigua and three supervisors in the City of Geneva. These 21 supervisors constitute the Board of Supervisors of Ontario County, and each supervisor casts one vote on all matters coming before said body, which governs the county and is vested with all the powers and duties set, forth in the County Law and other applicable laws of the State of New York.
The United States census of population for 1960 reflects a total county population of 68,070, of which 41,414 reside in the 16 towns, 17,286 in the City of Geneva and 9,370 in the City of Canandaigua. The populations of the towns vary from 558 in the Town of Canadice to 6,242 in the Town of Manchester. *954 The 11 smallest towns with a total population of 18,460, about 26% of the county population, elect a majority of the Board of Supervisors. The two cities and the two largest towns with a total population of 38,723, about 57% of the county population, elect 7 supervisors, % of the total number. Although it is likely that these population figures have varied in the past eight years, a wide disparity must continue to exist between these units of local government in Ontario County. A gross inequity of representation existed in 1960, as is evident, among other things when the population of the above two towns is compared, indicating perhaps that the Town of Manchester should properly have 11 supervisors to 1 in the Town of Canadice, and yet each township was and is entitled to one supervisor with one vote. On the basis of the present scheme it is possible for 11 supervisors representing about 26% of the population of the county to enact laws opposed by and to defeat legislation favored by members representing 74% of the population of Ontario County. It could not reasonably be anticipated that there would be such a shift in population during the intervening years as to establish population equality now. These facts clearly demonstrate that the present apportionment of the Board of Supervisors violates the “ one man, one vote ” required by the decisions of the United States Supreme Court, and no objecting defendant here seriously contends that the present scheme provides equal representation. This guarantee applies to local <( elective legislative bodies exercising general governmental powers 5 ?, and includes the County of Ontario. (Seaman v. Fedourich, 16 NY 2d 94, 101.) The County of Ontario must insure that the vote of each citizen is approximately equal in weight to that of every other citizen.
The argument is raised here that the United States census of population for the year 1960 is not applicable. Our Court of Appeals has made clear that as it related to “ local apportionment or districting, the declared policy is readily apparent and reason dictates that the most recent official census be employed in this area ”, (Seaman v. Fedourich, 16 N Y 2d 94, 104, supra.) The further argument that such census did not properly consider the inmates of the Veterans Administration Hospital at Canandaigua, the summer residents of Canandaigua Lake, the presence of college students, and other population factors was also disposed of in the Seaman case (16 N Y 2d 94, 105, supra.) The defendants here, in submitting a districting or reapportionment plan, may submit any relevant factors respecting such residents and population trends that their investigation may disclose, and such factors may be properly *955 considered in including or excluding them from any proposed redistricting and reapportionment plan. These factors are not issues in the action, but are matters to be considered in determining the constitutionality of any such proposed plan.
The County Attorney argues that the defendant board has studied the apportionment problem since 1966, and has a permanent standing committee concerned with such problem, and also with the question of the adoption by the county of a charter. A contract was entered into with the Rochester Bureau of Municipal Research to study such problems and various reports were made to the board. A proposed charter without a reapportionment plan was submitted, which the board failed to adopt after a public hearing. The board did adopt a weighted voting local law which was defeated in the general election held on November 5, 1968. It is further contended that the defendant, a noncharter county, is unable by reason thereof, to reapportion its Board of Supervisors at this time, and that enabling legislation in this area is pending before the New York State Legislature. Whatever the experience and effort, no relief has been given to the malapportionment and the individual citizen has been denied the constitutionally protected right to cast an equally weighted vote. The rejection of the weighted voting plan by the electorate cannot infringe the constitutional rights of the citizens of Ontario County. (Lucas v. Colorado General Assembly, 377 U. S. 713, 737.) This case is also authority for the proposition that judicial intervention may not be precluded because a nonjudicial political remedy may be available for the effectuation of asserted rights to equal representation. The fact that studies have been made, that a standing committee has been appointed, that the board has not hampered or delayed creating a constitutional plan, that a proposed local law has been submitted, that public hearings have been held, and that legislation is pending, aré no defenses, as nothing has been approved nor is there any certainty that any approval of any plan will be made affecting Ontario County.
The defendants have urged that there are issues of fact which require a trial. Various allegations of the complaint have been denied by certain of the defendants but an examination of the pleadings herein, in the light of the affidavits and briefs which have been submitted in opposition to the motion for summary judgment, discloses that there is no dispute as to the material facts, and the malapportionment in the Ontario Board of Supervisors under the u one man, one vote 55 rule is-recognized and admitted.
*956 The plaintiffs have established their grievance by applying the “ one person, one vote ” rule to show that the weight of their votes has been substantially diluted when compared with the votes of those living in other subdivisions of the county. A casual examination of the figures cited herein, is sufficient to demonstrate, in view of the fact that each supervisor has one vote, that the disparities in population as between the various municipalities involved, render it impossible to reconcile present districting with constitutional requirements of population based representation.
Accordingly, no triable issue of fact exists and the motion for summary judgment is granted, and section 150 of the County Law of the State of New York and other applicable statutes, insofar as their application requires the present apportionment of the Ontario County Board of Supervisors, are invalid and unconstitutional, and the present apportionment violates and offends against the equal protection clauses of the Federal and State Constitutions. (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11.)
Legislative apportionment is primarily a matter for legislative consideration and determination, and judicial relief becomes appropriate only when a legislative body fails to reapportion in accordance with constitutional requirements in a timely fashion and after it had an adequate opportunity to do so. The Board of Supervisors of Ontario County is directed to draft, approve and submit to the court a constitutionally valid permanent plan of reapportionment within 60 days from the date of notice of entry of an order which shall be entered hereon.
As was pointed out in Honig v. Board of Sxipervisors (31 A D 2d 989), the court is not unmindful of the dates for signing designating petitions and the date of the spring primary election, as well as the probability that 1970 census figures will be available during the life of the board to be elected in 1969. Accordingly, the Board of Supervisors is directed to adopt and submit a temporary plan of reapportionment, pending the effectuation of such permanent plan which will meet the constitutional standard as enunciated by the courts. It is observed that weighted voting plans have been approved by the courts, not only as temporary expedients (Graham v. Board of Supervisors of Erie County, 18 N Y 2d 672), but also as permanent plans (Dobish v. State of New York, 54 Misc 2d 367; Foster v. Board of Supervisors County of Livingston, [Easton, J., Oct. 29, 1968].) A variety of devices may be employed consistent with the mandate of u one man, one vote ” and it is suggested that a weighted voting plan, within the guidelines established by the *957 Court of Appeals in the case of Iannucci v. Board of Supervisors (20 N Y 2d 244) be considered as a plan of reapportionment. Requisite proof by expert opinion based on computer analyses must be submitted by the Board of Supervisors reflecting that each member of the board under any such plan has the mathematical possibility to cast ‘ ‘ the decisive vote on legislation in the same ratio which the population of his constituency bears to the total population ”, which voting power “must approximate the power he would have in a legislative body which did not employ weighted voting.” (Iannucci v. Board of Supervisors, 20 N Y 2d 244, 252, supra.) In the interim and pending the approval by the court of a plan, and until further order of the court, the Board of Supervisors shall function as it is presently constituted. The court retains jurisdiction of the action to insure full compliance with the provisions of this decision. This proceeding is adjourned to May 2,1969 at 10:00 a.m., at the Ontario County courthouse to receive such temporary plan of reapportionment and proof respecting the constitutional validity thereof, and for such other relief as may be requested, consistent with the provisions of the within decision.